Seaway v. Walgreens v. Wallgreens George Panchak on behalf of Plaintiff International Seaway Trading Corporation with me as my colleague and co-counsel John Yerga. May it please the court. The District Court's judgment on a motion for summary judgment that the patents in suit are invalid as being anticipated should be reversed for at least three reasons. First, the District Court failed to consider the entirety of the patented designs when making the comparison between the patented designs and the prior art design, that is, the Kroc 789 patent. Second, the District Court applied an incorrect test of anticipation, which was contrary to the existing precedent of this court. And third, the District Court misapplied the ordinary observer test in finding anticipation. Going back to the first point, the District Court failed to consider the insole design, which is part and parcel of the patented designs in suit. The insole design was determined by the District Court to be not something that was to be considered because it was hidden from view when a person wears the shoe. The District Court relied on the Contessa case for supporting this statement, and in fact Contessa holds just the opposite. In fact, Contessa says that each part of the claimed design must be considered when comparing the patented design to the prior art. The insole design in this particular case is important. It is novel, it's ornamental, and it's markedly different than the Kroc 789 patent. Can I ask you about the point of novelty test and its relation to anticipation and obviousness? I understand the way it worked before Egyptian goddess. You would, for an anticipation determination, you would pick a piece of prior art, which was said to anticipate, and then you would compare that prior art with even earlier prior art to identify the points of novelty in the patented design, right? I don't believe that's true, Your Honor. That's not true? Tell me then what role the point of novelty test did play in anticipation pre-Egyptian goddess. If you have a patented design and an infringer claims that your patent is invalid in view of a prior art reference, you look at that prior art reference and you determine the points of novelty of that patent. How? Of the patented design versus the other prior art. How do you know what in the prior art that you're looking at is a point of novelty? The novel ornamental features that distinguish the patent from the prior art are the points of novelty. What you said was you look at the prior art and you focus on the points of novelty in the prior art, right? I'm paraphrasing you, but that's what I understood you to say is step one. Other than the anticipatory prior art that's being advocated by the defendant. That's what Judge Sikes said. You pick the piece of art that's proposed to be anticipatory, right? That was the closest one to it, right? And then so you've got the piece of prior art that you say, gee, is this anticipatory? But then you go look at other pieces of prior art to see what it is in this prime reference are the points of its novelty over that prior art. Correct. That's correct. Yes. And so then you know you're looking at the anticipatory reference and you say, okay, the anticipatory reference was a circle with these three little spikes on it and the three little spikes on it are the things that made it different from all the other prior art. So now I look at the accused design that is supposedly anticipated and I compare this first piece that's been adumbrated, if you will, by the points of novelty and you make the comparison. And the challenged patent is only invalid if it has picked up and copied the points of novelty of this prior art reference. That's correct, Your Honor. I think that's what Judge Daigler said. Right. And my next question is, does that make any sense? Absolutely, sir. The reason it makes sense is because the standard for anticipation is what has been established by this court's precedent in the Dorr master case and in the Bernhardt case. Yeah, but in utility patents you don't look beyond the reference that is allegedly anticipated. Your Honor, those two cases that I refer to. That's correct, right? The two cases I refer to. But is it correct, is it not, that in the utility patents you do not look to the earlier prior art, you only look to the alleged anticipatory reference? In a utility patent? Yes. But the Dorr master... The answer is yes, right? I believe that's true. You look at the anticipatory reference for what it teaches on its face and what it teaches by adherency in a utility case. Correct. Right. The Dorr master case and the Bernhardt case, however, are design patent cases, Your Honor. And those cases say that design patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention. Bernhardt said the alleged prior art reference must include the novel ornamental features that distinguish the patent design from the prior art. Your Honor, you would say those two cases do not employ the point of novelty. I would say that those two cases do employ the point of novelty. Not the way you just described them. Well, however I described it before, this is the law, this is the existing precedent that is the law of anticipation for design patents. So whatever I described before is irrelevant. Do you think this panel lacks the authority to adopt the Egyptian goddess test for anticipation? The Egyptian goddess test was stated to be a test for infringement because it was only a case for infringement, but do you view this court as being barred by the Bernhardt, by the previous precedent? No, Your Honor. I'm saying that in accordance with the Titan tire case that was decided in 2009. Titan said we don't know whether we're going to use Egyptian goddess to tell us how to decide validity. They said we don't need to do it in that case. The Titan case said that the district court should use existing precedent to decide the issue of design patent validity until this court, if and when, decides otherwise. And what I'm asking you is whether this court can decide otherwise. Certainly this court could decide otherwise, but that's not the facts and that's not the issues that were before the district court in this situation. Right. But why shouldn't we decide that the proper test for validity in the design patent field is the test that was applied in Egyptian goddess? Well, there are a couple reasons, Your Honor. First of all, if you adopt the ordinary observer test as the sole test for anticipation of design patent, you essentially have two ordinary observer tests, one for 102 and one for 103. The 103 test for design patent obviousness is whether or not two designs in their overall appearance are substantially similar from the view of a designer of ordinary skill in the art. Informed by the prior art. It doesn't say that. Egyptian goddess says that. Egyptian goddess is an infringement case, Your Honor. That's what it says for infringement. No, Your Honor, I'm saying that with regard to validity. Yeah, but why don't we first establish what Egyptian goddess says for infringement, okay? And it's what we just said a minute ago, right? Yes. You take the ordinary observer and you load them up with the knowledge of the prior art and then you have them go make a triangulation and say, is there infringement? That's correct, Your Honor. The question I thought you asked me was, why wouldn't we want to have that test for design patent validity? Right. And my answer to you was that there are two bases of design patent and validity, 102 and 103. As far as 103, if we just look at that, the current test, the Durling case, says that you look at the two designs, the alleged prior art and the patented design, and you look at whether or not those two designs are substantially similar to a designer of ordinary skill in the art. 102 design patent and validity would now become solely you look at the two designs from an overall point of view. You determine if they're substantially similar from the viewpoint of an ordinary purchaser with knowledge of the prior art. We believe that those two tests would be blurred by district courts and juries alike because the two standards essentially both look at the overall configuration of the two. And I think if you look at the district court's decision in this case, you can see that blurring occur from page to page, Your Honor. You can see on one page the court is talking about whether or not the two designs are substantially similar from the viewpoint of a designer, and on the very next page you'll see that the court talking about the two designs being substantially similar from a purchaser with knowledge of the prior art. We believe there would be blurring. We believe it would emasculate the 102 test as it has been tradition since the Bernhardt and Dormaster cases. And third, the difference is that with regard to infringement, you have a nice three-way comparison. I think this is the point. What you're suggesting is that in the anticipation context, it's whether someone skilled in the art views the two as substantially similar as opposed to the ordinary observer, which is the test in infringement? Is that what you're suggesting? No. What I'm saying is that if you have the ordinary observer test as the sole test for anticipation of a design patent under 102, that looks to the overall similarity of the two designs, albeit from the viewpoint of a purchaser with knowledge of the prior art. And if you look at the test for invalidity under 103, it's the same thing except that the viewpoint is going to be from a designer of ordinary skill. Now, do you mean to tell me that a judge or jury sitting there trying to decipher whether or not something is invalid or applying a test for invalidity under 102 or 103, and the only difference between the two is you look at the overall configuration. But in one case, you look at it from a hypothetical purchaser with knowledge of the prior art. And the other one, you look at it from a designer of ordinary skill in the art. I would submit to you that the two would sound exactly the same to district court judges and to district court juries. And further, the problem with Egyptian got them. And you solved that problem. Your proposed solution to that problem is point of novelty for anticipation? My solution to this, Your Honor, is to maintain the Bernhardt and the Doremaster tests as we have them now. I.e., point of novelty for anticipation. I.e., point of novelty for anticipation. It should be a higher standard than obviousness. Let me tell you what troubles me looking beyond the minutiae of the tests and so forth about the way this all is likely to function in the real world or at least some risk of this. It seems to me you could have the following situation. You tell me why this is wrong. In which party A comes up with a design, a very attractive design, and gets a patent on that design and creates a commercial embodiment for the design. Party B really likes the design and wants to take advantage of the commercial value of the design. So party B comes up with a design that is very similar to design A except it has some point of novelty. But to an ordinary observer, they would look the same. But there's a point of novelty they can point to. So they go to the patent office and they point out the point of novelty to the examiner and they get a patent. Can I interrupt you just for one second? You know where the denouement is going, which is party B then says to party A, we're going to sue you because you're infringing our patent and you can't argue point of novelty because under Egyptian goddess it's the ordinary observer. Your Honor, I would submit to you that that can't happen and I'll tell you why. Because when the patent office examiner is looking and examining that application that has the one point of novelty, it might pass muster under 102. And even that's arguable because it has to be a novel ornamental feature with respect to the priority. By hypothesis it is. But there's also 103. There's another hurdle that you have to pass when you're in the patent office and 103 is a different test as we talked about. It's the ordinary observer test as viewed from a designer of ordinary skill in the art. I would submit to you that the patent office examiner, and this happens, I prosecute patents all the time and I prosecute design patents, and I can tell you I have received many a rejection under section 103 where you have just the case that you described where you have a design that's slightly different, maybe has one or even two points of novelty. The examiner doesn't reject it under 102 but rather the examiner uses the other tool in his or her arsenal which is 103. That's what it's for. Except that standard, I still think you have the disequilibrium that I'm talking about. Let me finish, calm down. What I'm concerned about is that your expert eye that you say is inherent in the 103 test is going to be much more discriminating and finding differences that the ordinary observer won't find. So something would be deemed to be different for purposes of 103 and it would not be deemed to be different from the perspective of an ordinary observer. So we would end up with the problem that I posit. Your Honor, I would respect that. Do you understand what my concern is? Yes, I understand completely, but I would turn it exactly around. The test under 103, when you have a designer of ordinary skill in the art, the question becomes would a designer of ordinary skill in the art looking at the prior art reference and maybe some other reference in combination, would that skilled expert, that designer of skill in the art, would he be able to make, or she be able to make, the logical jump between the prior art references and what is being applied for. I think it's a much harder standard because you're more likely to be able to have the patent office examiner say to you, listen Mr. Pinchak, I have this reference or I have a combination of two references. Now, you might have a slight difference, but a designer of ordinary skill in the art would be able to look at that reference and make the logical jump to the design that you're showing here. That's what separates our case from a situation that you're talking about here because the designs that we have, the patented designs in this case, not only pass muster under 102, but also pass muster under 103 from the viewpoint, and I think it's a stricter viewpoint. I don't think it's an easier viewpoint because the examiner isn't going to say, oh well, because this is a person who is a designer of ordinary skill, I'm going to give you a greater leeway of patentability. I found it to be just the opposite, Your Honor. I found the examiner saying... Isn't the difference between 102 and 103 that we adopt the ordinary observer test for both 102 and 103, and the difference with 103 is that you can combine references where there's a motivation to combine references. So the test for 102 is you've got to look at a single reference. The test for 103 is you're allowed to look at multiple references if there's an appropriate motivation to combine them. I think that that is a difference, but that is not always the difference. Rejections can be made under Section 103 on the basis of a single reference, and they oftentimes are. The reason that they're made is just what Judge Bryson said, because now the standard is, would one of ordinary skill in being a designer understand that you could make the leap from the application, what's shown in the application, to the prior art? And if you can make that leap not from the viewpoint of an ordinary purchaser with knowledge of the prior art, but from the even greater degree of creativity and the greater degree of knowledge that a designer would have, then you're going to be rejected in the patent office, Your Honor. Could I ask a question about your insoles? I'm looking at Figure 6 in the 033 patent, but the figures are all pretty much the same. The insole of the patents in suit are little circles shown in a pattern. Yes, Your Honor. And they're not shaded the way the little holes on the top of the shoe are shaded, and the MPEP tells you why you do or don't use shading. So my question to you is in the patent, in the little circle drawings, those little circles are broad enough to include both nubs or dimples or even just circles, aren't they? Your Honor, they're shown in solid line in the patent. Yes, the solid line circle on the insole. Yes. So what I'm trying to decide is whether the way in which that's depicted could read for infringement purposes on nibs on elevated shoes. When I was looking at the photograph of the accused shoes, there are a couple of drawings, a couple of pictures of them, and they show a series of dots, and I was curious to know, are those elevated nubs? They're exactly the same as ours, Your Honor. They're elevated nubs? They're elevated nubs, just like ours.  are elevated nubs. A dictionary definition of a dimple is something that goes in, like you have a smile, and a nub is something that goes up. I went and looked at the MPEPS on shading and all the rest, and it looked to me like if you are specifically claiming a particular three-dimensional thing, you can claim it as you claim the eyelets on the top of your shoe there, right? In Figure 6. Your Honor, do you mean the pattern that we're talking about, something like that? Correct. The circles that are shown on the insole aren't shaded at all. There's no shading to show. If you look at the circles that are on the top where your feet go inside the shoe, are you looking at the same thing? Yes, I am. Figure 6? Yes.  what you're showing in your design are the circles that have depth that goes through the shoe. But as I understood it, when you depict not in dot, dot, dot, but in solid lines as you've done in your insole, you're claiming broad enough to claim both what I call a nib as well as a dimple. And you are asserting this claim against shoes that have elevated nubs. Yes, Your Honor. That's exactly correct. And we have in suit, I believe, a photograph of the Crock Prior Art shoe of its insole in the record. Now there's one of it at A225, among others, and there's a bigger one at A308. Just to help you, A308, you can see where you're sitting. Yes. Nice big picture. Yes. And so it is showing the pattern of the elevated nubs in the Crock shoe, the Prior Art, right? Correct. So the question for an ordinary observer would be to ask whether the ordinary observer, looking at the two designs, the elevated nubs, if you would, in exhibit picture 6 of your patent in this, whether you would have the requisite similarity or a lack of similarity. Well, I think if you look at what's shown in figure 6 of the patents in suit, and you look at what's shown in figure 6 of the Crock 789 patent, which is what the judge relied on, whatever... Well, that's hard to do because it's not clean. You have a pattern in figure 6. Your Honor, that's what the judge applied as the anticipatory reference. Well, I understand that, but I mean we can judge from what is in the record. We aren't limited to comparing patent to patent. I think as a matter of law, we can look at all the Crock Prior Art that was in suit to decide whether that Crock Prior Art would support the judgment of anticipation. Well, and Your Honor, I think if you look at that pattern, whether you look at what's shown on page EA308 or you look at figure 6 of the Crock 789 patent, I think it's very clear that that pattern... Well, that's the fact question. When I said once you look at it, the question is how would the ordinary observer react when presented with figure 6 of your patent and the depiction of A308... Well, Your Honor... ...recognizing that your little circles represent elevations as are shown in the Crock Prior Art. Well, I think one thing that you would recognize, Your Honor, is that they are different and that they would contribute to a difference between the overall... Well, I understand that. And there is a difference between the number of the little squares between the Prior Art and the patent in suit and the little round dots and how many of them are there and where are they. And the toe as well. I understand that. So what we're saying here is on a motion for summary judgment, which is what we're talking about here, when the court acknowledged that they were novel... Assume for purposes of argument, which you don't want to, assume for purposes of argument that there had never been an insole claimed. So in your patent, you didn't claim a design on the insole. And so there was no, quote, insole issue in the whole case. The case would just be coming up here clean. Did the trial judge make the right call? Let's assume you're using the ordinary observer test. Yes, Your Honor, I understand. So what is your best shot as to why absent the insole, there was reversible error? Your Honor, you hit the point because all this other talk about what should or shouldn't be the test to me is another issue. What we're really talking about here is we're talking about a motion for summary judgment and we have this district court acknowledging that there are novel differences. We've identified five points of novelty. The court has considered four. Those are shown on pages 19 through 21 of our reply brief. The district court, in its own opinion, this is not legal argument. This is not attorney argument. This is what the court said. They said these differences, the four differences that you pointed out, I call them points of novelty. The district court characterized them as points of difference. And the district court judge said those differences are novel. On a motion for summary judgment, when the court acknowledges that there are differences, that there are novel differences between the prior art design, the Kroc 789 patent, and the patented designs, at that point the district court should have been precluded. Excuse me for just a second. You go too fast. Oh, I'm sorry. When he says novel differences, what am I supposed to understand he meant when he used the word novel differences? Oh, I can tell you exactly what he meant. Patentably distinct? What he is saying that these are points of novelty that are both ornamental and novel with respect to the Kroc 789 patent. By points of novelty meaning they didn't exist in prior art. No, he meant that they were novel with respect to... That's what I'm trying to get at. Not novel and patentably distinct because then he couldn't have reached the result he read on anticipation. Right? So when he said they're novel, clearly they're different. They're different round ones and different square ones and different shapes. I would take a broader position than that. I would say when he said they're novel, he is looking at the prior art that was presented by the defendant which included not just the Kroc 789 patent but also the beach clog, the cayman clog, and the aqua clog. And when he made that statement, he said to this court, the best prior art that I have is the 789 patent. That's what I'm going to rely on for anticipation solely. And those items that you identified as points of novelty, I am saying they are novel points of difference. And once he made that statement, Your Honor, given that this is a motion for summary judgment and all facts have to be viewed in a light most favorable to see way, it must be the case that the determination of how those points of novelty, how those novel differences, as the court called them... If we just throw them out the window and say they're no good under Egyptian goddess and they're no good here. Judge Clevenger, even if you did that, even if you did that, as the Egyptian goddess case said, the points of novelty are considered in the comparison of the designs, the overall designs. In fact, Egyptian goddess said... What you're saying is if we apply the ordinary observer test from the point of view of the ordinary observer test Are you listening to me? You have to... Yes, I'm sorry. You have to consider the insoles as well as the rest of the shoe. And that from the point of view of the ordinary observer, that's the difference that prevents summary judgment. That's what you're saying, right? Absolutely, Your Honor. Absolutely. But it's more than that. Once the court made the determination that there were novel differences between the 789 patent and the remaining prior art, because he took what he considered to be the best... You and I were talking about the cases of the insole wasn't even involved. That's what you and I were talking about. The conversation... Judge, I put the insoles back in. We were having a conversation about what's wrong if you just have the other four. If you have the other four, the other four points of novelty or novel differences the court admitted they were, play into the comparison between the prior art and the patented designs. My contention is even if you threw out the point of novelty test entirely, let's forget about it. Egyptian goddess itself says you consider the points of novelty as part and parcel of the comparison between the patented design, the prior art, and the accused device. So you don't throw away... The point of novelty test has been incorporated into the ordinary observer test. That's what Egyptian goddess said. And here, once the court makes the admission that indeed you have novel differences, ignoring the insole for a second, just talk about the other four. That alone is sufficient to defeat a motion for summary judgment because it has to be the case that those novel differences play into the determination of whether the two designs, the prior art design and the patented design, are substantially similar or not. It has to be the case. If there were novel differences and it didn't play into the dissimilarity between the two, then they weren't differences, were they? I think we'd better stop there. Thank you, Mr. Chinchak. We'll hear from Mr. Walters. May it please the court, I'm Mark Walters, counsel for Walgreens and Touch Sport. I want to start with the idea that differences do not mean the same thing as novelty under Section 102. Hold on a second. Do you agree that under Contessa and these other cases that the insole has to be considered? I would agree, Your Honor. So the district court made a mistake in that? I would have to concede that there is an error. I think it's harmless, Your Honor. Okay. Why is it harmless? Let's assume we apply the ordinary observer test. Why is it harmless? Again, going back, this is a summary judgment context. It's a harmless error because there was no evidence submitted in opposition to summary judgment that would have permitted a juror to conclude that the insole changed the overall impression of the shoe and the eye of the ordinary observer. That's my answer to that question. And I would also say that... What sort of evidence would you need when you have a physical... I mean, suppose that it had not been these small dimples but there had been great big red stars or something in the insole that just drew the eye immediately. Would you have needed some kind of evidence in order to survive summary judgment? Maybe not in that case, Your Honor. I think that's the Contessa case. If you look at figure 4 of Contessa in that patent... What I'm trying to elicit is are you suggesting that you needed an expert affidavit in opposition to summary judgment in order to create a triable issue of fact or is it enough for the district court or us to look at the shoes and conclude well, that's sufficiently glaring or obvious or apparent to anyone who picks up the shoe that that's... Are we talking about the Star case or are we talking about my case? Either one. Either one. Okay. You can address them seriatim. Would you say with respect to the Star you say no expert evidence... I would say probably not in that case, Your Honor. And why then in this case? Well, in this case, Your Honor, what we have is we have a defendant who's come forward with very similar prior art and I believe that we've met our burden at that point to produce prior art that makes a prima facie case of invalidity that shifts the burden to the other side to come forward with facts on summary judgment that would permit a juror to find in their favor. Well, you can't just look at a very similar overall shoe that has a very minute difference and then conclude that a juror based on that alone without something else could... That's just the problem. I mean, that's the whole assumption you're making. I mean, it may be that the differences in the upper part of the shoe are insubstantial but the insole apparently is viewed when people buy the shoes when they take them   So, how can that be a minor difference? Because the pattern on the insole is different from the insole on the sole that's on the sole that's on the    used recently on his prior article the Crocs reference. Your honor it's different on a top down view but I don't believe how ordinary businesses produce evidence that there is a very slight difference in position. There are figures of the Crocs  art that show the whole insole but the figures of this pattern show part of the insole. I do believe the district court was partly correct in that part of the insole is hidden from view. You don't see the part of the insole that's under the toe but you see the part of the insole that has the ankle under the foot. So does the ordinary observer. It's different. It's different between horizontal and vertical. The substantiality of figure six of the design is what I would call vertical like this. It's at 90 degrees to the side of the shoe and you look at the Crocs and it's exactly the opposite way. One is running this way and one is running that way. Here again we have a particular feature that's part of an overall impression of a shoe. That's what the Egyptian goddess said. It's the overall impression. I believe there's no dispute about that. It's very similar to the patent at issue in this case and the overall impression I believe we showed evidence that would permit a juror to conclude that. We made our case of obviousness. There's a single feature that might be different. I believe more evidence is required. I don't believe this case needs to be decided on obviousness. We're talking about a single reference here. We've got some slight differences between the three references. There's the aqua clog. You have the Cayman design. This isn't a case where there's a dispute about combining the prior art references. This is a case about a single reference. I think you can use either of the three pieces of prior art   all so highly similar. There's no one piece. What I would have to do is take the three pieces of prior art and take the explosion shoe or whatever, the one that shows the insole. Then I would have to have the outer sole of it as well. There's no one shoe that was put. Is there any place in the record where I can see this single reference you're talking about? Well, there's the 789 patent which was a single reference. But the 789 patent doesn't do you a nickel's worth of good on the insole. Nothing's claimed. Well, I don't think it has to be claimed to be disclosed as prior art, Your Your   when you were illustrating studies. There is a certain position in the insole in the 789 patent. Looking at the overall visual impression, this is the test again for an infringement analysis. In Egyptian goddess, this court remarked that the point of novelty test was a fairly recent vintage in the infringement analysis. In looking at the cases cited in the briefs and the cases that the predecessor court cited, it is a very recent vintage in the anticipation context. Cases that say that the ordinary observer is the test for anticipation are 661, 1214. You favor the ordinary observer test. I do, Your Honor. The problem that you have with the ordinary observer test is that it is a very recent   anticipation context. It is a very recent vintage in the anticipation context. It is a very recent vintage in the anticipation context. I do, Your Honor. The obviousness was the basis of the motion. I didn't see a case in the brief, Your Honor, about that, but it is something that we asked the lower court to do. It was fully briefed and it is something that is available. I don't think this is an obviousness case. This case is about whether there is novelty over a single prior art reference. Imitation is not novelty. I submit that is what we have in this case. We don't have invention. Historically, it has been in  of the ordinary observer. The test there is not limited to considering identity of design in the infringement context. It is also not a novelty test. You need to apply it from the eye of the ordinary observer. Otherwise, you assign exaggerated importance to small differences. That can create problems. I want to address some of the comments that were made. If we eliminate the   of the ordinary observer, we have to combine those references. The references as a whole must have elements that create the same overall visual impression to the ordinary observer. The question of combining is done from the perspective of the ordinary designer. I don't see anything that is difficult or impractical about applying that test. In a 102 context, you have a situation where there is a highly similar admitted prior art reference with a slight tweak in change. That is not enough to create novelty, at least not as that term is used in section 102. Do you advocate or think it makes sense to have an ordinary observer for anticipation but an ordinary designer for obviousness? I believe that does make sense. It makes perfect sense. I believe it is the law of this court. Setting aside the point of novelty problem, which we haven't said anything about in the post-Egyptian goddess in this context, so we really start plowing new ground. What I'm asking you is, stripped of the point of novelty, that's what we decide to do, does it make sense to say that for purposes of anticipation you ask the question of what an ordinary observer would think of two references, whereas for obviousness you would look to a designer  field, a person of ordinary skill as a designer? I would phrase it differently, Your Honor, and I think the case is phrased differently. You look to the perspective of an ordinary observer, and you look to the perspective of a designer. Whether or not that combination creates a similar appearance is going to be done from the perspective of an ordinary observer. I believe that's a perfectly fine test for us  apply. I believe it's the one we ought to be applying. I think what Mr. Pinchak's point about confusion was that he could imagine a future day when Judge Reiskamp is going to be the judge  the future. I think that Judge Reiskamp is going to be the judge of the future. I think    judge of the future.